UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-CV-81079-RLR

SFR SERVICES LLC,

        Plaintiff,

vs.

ARNESEN WEBB, PLLC,
JAY ARNESEN, and
PARIS WEBB,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION TO ENFORCE SETTLEMENT AGREEMENT [ECF No. 24]

Defendants Arnesen Webb, PLLC ("Arnesen Webb"), Jay Arnesen, and Paris Webb (collectively "Defendants") move to enforce an alleged settlement agreement between the parties. I have reviewed the motion, Plaintiff's response, and Defendants' reply. ECF Nos. 24, 26, 27. During a telephonic hearing on November 28, 2023, the parties agreed that the motion should be adjudicated on the written pleadings and their attachments. ECF No. 32.

        I.        LEGAL PRINCIPLES

Florida contract law determines whether the parties have reached an enforceable settlement agreement. *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999); *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992). Under Florida law, the party seeking to enforce a settlement bears the burden of

establishing that the opposing party assented to all material terms of the contract. *Carroll v. Carroll*, 532 So. 2d 1109, 1109 (Fla. 4th DCA 1988). Mutual reciprocal assent to every essential term is a prerequisite to the formation of a contract. G*ibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989).

"To be enforceable, a settlement agreement 'must be sufficiently specific and mutually agreeable as to every essential element.'" *Barone v. Rogers*, 930 So. 2d 761, 764 (Fla. 4th DCA 2006) (quoting *Long Term Mgmt., Inc. v. Univ. Nursing Care Ctr., Inc.*, 704 So. 2d 669, 673 (Fla. 1st DCA 1997)). "Although the law favors settlement agreements and their enforcement whenever possible, the evidence must clearly demonstrate that there was mutual agreement to the material settlement terms." *Cheverie v. Geisser*, 783 So. 2d 1115, 1119 (Fla. 4th DCA 2001) (citations omitted).

No enforceable contract exists where essential terms of the agreement remain open and are subject to further negotiation. *Freedman v. Fraser Engineering & Testing, Inc.*, 927 So. 2d 949, 952 (Fla. 4th DCA 2006). "Where the parties are merely negotiating as to the terms of an agreement to be entered into between them, there is no meeting of the minds, and consequently, no contract while the agreement is incomplete." *Goff v. Indian Lake Ests., Inc.*, 178 So. 2d 910, 912 (Fla. 2d DCA 1965). "Preliminary negotiations leading up to the entry into a contract, therefore, must be distinguished from the contract itself." *Murdoch Sec. v. Navarro Grp. Ltd., Inc.*, No. 08-60505-CIV, 2010 WL 11505556, at *6 (S.D. Fla. Jan. 27, 2010) (J. Bandstra) (first citing *Webster Lumber Co. v. Lincoln*, 94 Fla. 1097, 1113 (Fla. 1927); then citing *Williams*, 605 So. 2d at 893). "The making of a contract depends not on the agreement

of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974) (quoting *Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957)). "For a settlement to be binding on the parties it should be clear that it is full and complete, [and] covers all issues . . . ." *Gaines v. Nortrust Realty Mgmt., Inc.*, 422 So. 2d 1037, 1040 (Fla. 3d DCA 1982) (citations omitted).

What is an essential term of an agreement "varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." *Nichols v. Hartford Ins. Co. of the Midwest*, 834 So. 2d 217, 219 (Fla. 1st DCA 2002) (citations omitted). When a settlement agreement contemplates a release, the "character, nature, or type of release" is an essential term of the agreement. *Id.* at 220; *Cheverie*, 783 So. 2d at 1119.

## II. FACTS

Arnesen Webb is a law firm. The individual defendants are the principals of Arnesen Webb. SFR was the assignee of first-party homeowners insurance claims. In February 2019, SFR and Arnesen Webb signed a retainer agreement for Arnesen Webb to represent SFR in litigation against the insurance companies. ECF No. 1-1. If SFR prevailed in that litigation, the retainer agreement called for Arnesen Webb to receive the greater of (1) the court-awarded attorneys' fees, (2) the attorneys' fees negotiated as part of a settlement, or (3) an hourly fee based on Arnesen Webb's rates and time expended on the case. *Id.* Between 2019 and 2023, SFR retained Arnesen

3

Webb in thousands of first-party property damage claims. ECF No. 1 ¶35. In January 2023, SFR discharged Arnesen Webb as its lawyers. *Id.* at ¶49; ECF No. 24-2. Arnesen Webb filed charging liens in the then-pending cases. ECF No. 1 ¶54.

SFR sued the Defendants in a three-count complaint. Count I is against only Arnesen Webb; it asks for a declaration that Arnesen Webb is not entitled to fees in certain pending cases. Count II claims that all three defendants committed legal malpractice. Count III alleges that all three defendants breached fiduciary duties to SFR.

In the email discharging Arnesen Webb, SFR offered "to reimburse the Firm for its out-of-pocket costs for [pending] files (no attorney's fees) as long as the Firm agrees to sign a release of any entitlement to impose a charging lien in these cases." ECF No. 24-2 at 1.

Several weeks later, Arnesen Webb proposed that, in return for releasing its rights to any retaining or charging liens, it would be paid on a per-case basis, with the payment based on the case resolution:

> Our retaining and charging liens would be broken up in categories as listed below:
>
> 1. Settlements under 20k global: Law firm is paid 33 1/3 percent, inclusive of fees and costs. Example: Case settles for 10k global. Law firm is paid $3,330 even if it has more than that in hard costs.
>
> 2. Settlements 20k - 40k global: Law firm is paid a flat fee of 10k plus costs.
>
> 3. Settlements 40k and above: Law firm is paid a flat fee of 12.5k plus costs.
>
> 4. Dismissed files: Law firm is paid $0.00.
>
> 5. Trial cases you win: Law firm seeks payment directly from the insurance company. Reasoning: Neither SFR nor it's new legal counsel can take credit or seek payment for work performed by our law firm. It's the equivalent of throwing money away. We want to share in your success at trial. The insurance company is responsible for all of our legal fees and costs.

ECF No. 24-3 at 1. That same day, SFR rejected this "sliding-scale" proposal. It proposed a fixed rate of $6000 plus costs per file:

> I want a per file number, not contingent upon settlement. I'm not in the business of looking at sliding scales etc.
>
> 6k lien plus costs on every file.
>
> 40 pre 7/1 files puts you at 240k minimum plus costs.
> Figa cases
> That's another 30 cases.

*Id.*

A week later, SFR made a "one time offer" for Arnesen Webb to put a charging lien of $5,000 plus costs on each file. ECF No. 24-4 The same day, Arnesen Webb made a counter-offer: "With the exception of the *SFR Norton* case, for all remaining, viable, non-settled SFR files, we agree to resolve our lien interest for $7,000 in fees per case plus incurred costs per case. . . In addition, for each file that has been dismissed by our law firm, or where a dispositive motion was granted against SFR, or a defense verdict entered, we will seek no fee compensation or cost reimbursement from SFR." ECF No. 24-5.

Three days later, on February 8, SFR sent an email to Arnesen Webb saying, "I am firm concerning 5k a file plus costs. Please let me know if this is agreeable. This would be on files that have recovery." ECF No. 24-6 ("Offer Email"). Later that day, Arnesen Webb responded by email:

> Thank you for your email this morning. We accept your offer. We want to move on and repair our relationship with you on both a personal and professional basis. We accomplished so much good together that we cannot allow our relationship to go down in flames over such a small amount of files.

5

> Our acceptance is contingent upon all parties signing the attached settlement agreement and release. The accusations lobbed against our firm were too much. This agreement and release resolves all disputes and wipes the slate clean. Please have your attorney review the document before you sign.

ECF No. 24-7 at 1 ("Acceptance Email"). Appended to the email was a four-page written settlement agreement ("Settlement Agreement"), seven pages of exhibits listing pending cases, and a general release by SFR of any claims against Arnesen Webb and the individual defendants.

SFR responded the next morning at 8:04 am, "I appreciate the willingness to get to a common place and move on and I am seriously considering it. In the interim before I put on a signature on this release, please release ALL files to Alper as well as Fernandez immediately. Regardless of stips, you know they are subbing in on the files." *Id.*

At 5:40 that afternoon, counsel for SFR sent comments to SFR's principal about the proposed Settlement Agreement. ECF No. 26-1. Those comments included proposed edits to the Settlement Agreement. One proposed addition was a prevailing party fee-shifting provision if there was litigation over the Settlement Agreement. ECF No. 26-1 ¶19. Other proposed changes set deadlines for certain actions and required closing statements before disbursement of settlement funds. Counsel also converted the general release into a mutual release. *Id.* at 17. The proposed changes were never communicated to Arnesen Webb.

A week later, SFR emailed Arnesen Webb, "After a collection of events and massive fee bills coming in (from lack of competent legal representation) I am withdrawing any fees/costs compromises on the cases. Retaining liens and charging

6

liens are improper, being that the contingency did not happen. I want a clean walk away on ALL files (besides Norton which Whisler is entitled to his fees on the trial win). No fees, no costs on ANY claims." ECF No. 24-8.

Later the same day, SFR emailed Arnesen Webb, "I understand that you want to discuss this. I am currently taking this offer off the table after the string of events today." *Id.*

### III. DISCUSSION

Defendants argue the parties settled their disputes on February 8 when Arnesen Webb emailed its acceptance of SFR's offer, along with a proposed Settlement Agreement and release. Defendants say the settlement had three material terms: "payment for hard costs, payment for fees, and a mutual general release." ECF No. 24 at 7. Defendants also note that Arnesen Webb released its liens on seven files and SFR accepted the lien-free files. Defendants say this conduct is evidence of the parties' mutual assent to the Settlement Agreement. *Id.* at 8-9.

SFR responds that no enforceable settlement exists because any agreement was contingent on the parties signing a written settlement agreement and the proposed written agreement said it was binding only if executed by all signatories. ECF No. 26 at 1. SFR says no enforceable agreement was reached because the contingencies were never satisfied.

SFR offered to settle the parties' dispute by paying $5000 per file plus costs for each file that had a recovery. SFR proposed no other terms. Arnesen Webb accepted SFR's proposal, but made the acceptance "contingent upon all parties signing the

attached settlement agreement and release." As such, Arnesen Webb proposed new, material terms, including the release.

The parties never agreed on the scope of the release. The Offer Email made no mention of a release. Nevertheless, the Acceptance Email included a one-way release — SFR released Defendants, but Defendants did not release SFR. The Acceptance Email did not mirror the material terms of the Offer Email. It proposed a new material term, which SFR never accepted. Given the nature and complexity of this transaction, the scope of the release was a material term.[1]

Defendants correctly cite cases holding that an oral settlement agreement can be enforced, even where the parties contemplated reducing the agreement to writing. What makes the alleged agreement here unenforceable is that SFR never *agreed* to the material terms of the proposed settlement document, not that SFR never *signed* it.

Defendants have not met their burden of showing that SFR assented to all material terms of the alleged agreement. Because the lack of mutual assent to the release is sufficient to dispose of the Motion to Enforce Settlement, I do not address the other arguments SFR makes in opposition to the Motion.

---

[1] The fact that SFR's counsel edited the written document to add a mutual release is further evidence that this term was material to SFR.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court DENY the Motion to Enforce the Settlement Agreement.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 16th day of January 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE